19852

John W. LINDSAY, as Chief Insurance Commissioner of South Carolina, Respondent-Appellant, v. NATIONAL OLD LINE INSURANCE COMPANY, Appellant- Respondent.

(207 S. E. (2d) 75)

622

*Messrs. Belser, Belser, Baker & Barwick,* of Columbia, *for Appellant-Respondent,*

Messrs. *Daniel R. McLeod, Atty. Gen., and Glen E. Craig,* of Columbia, *for Respondent-Appellant,*

Messrs. *Carlisle Roberts and Thomas C. R. Legare, Jr.,* of *Roberts, Jennings & Thomas,* of Columbia, *Amicus Curiae,*

*Messrs. Belser, Belser, Baker & Barwick,* of Columbia, for *Appellant-Respondent, in Reply.*

July 9, 1974.

Moss, Chief Justice:

This action was brought by John W. Lindsay, as Chief Insurance Commissioner of South Carolina, against National Old Line Insurance Company, under "The Uniform Declaratory Judgments Act", Section 10-2001 *et seq.,* 1962 Code of Laws. The purpose of the action was to obtain a declaratory judgment as to the application of Section 37-132 of the Code, as the same applies to the license fees and taxes to be paid by the insurance company under Sections 37-122 and 37-128 of the Code.

National Old Line Insurance Company is a life insurance company incorporated under the laws of the State of Arkansas. It is licensed as a foreign life insurance company to do business in South Carolina. It is agreed that the State of Arkansas, pursuant to Section 66-2302 of its Code, imposes upon a South Carolina life insurance company, for the privilege of transacting business in that State, a tax of two and one-half percent of its gross premium income and does not permit a South Carolina life insurance company to re-

duce the amount of such tax by making investments in said State. It was also conceded by the insurance company that it was required to pay its license fee to the State of South Carolina on the basis of gross premiums.

Under Section 37-122 of our Code, the Insurance Commissioner shall require each foreign life insurance company to pay a license fee to the State of South Carolina in an amount equal to two percent of the total net premium income collected in this State. Under Section 37-123 of the Code, provision is made for the reduction of the two percent license fee provided for by Section 37-122 by reason of credits granted an account of local investments. This statute provides for a graduated reduction of such license fee with the maximum not exceeding one percent. It appears that the insurance company has made certain investments in South Carolina as provided by Section 37-123 of the Code, so that the rate of the license fee imposed upon it by Section 37-122 was reduced to one and one-fourth percent.

Under Section 37-128 of the Code, the Insurance Commissioner is required to collect from all foreign insurance companies, in addition to the license fees provided by Section 37-122, an amount equal to one percent of the total net premiums collected in this State. The insurance company here has paid license fees to South Carolina under the above cited statutes at the rate of two and one-fourth percent of its net premium income in South Carolina.

It is the position of the Commissioner that the insurance company is required by our "Retaliatory Statute", Section 37-132 of the Code, to pay an additional amount of one-fourth percent or a total of two and one-half percent of its gross life insurance premium income from this State, so that it will pay to South Carolina the same amount that a South Carolina insurance company would be required to pay to the State of Arkansas. It is admitted that the Commissioner has made demand upon the insurance company for the payment of this additional amount and such has been refused. This action followed.

The Commissioner, pursuant to Rule 44 of the Circuit Court Rules of Practice, moved for Summary Judgment in his favor, asserting that there was no genuine issue as to any material fact and that he was entitled to judgment as a matter of law. Two questions were presented for decision in the lower court and here, as follows: (1) Does Section 37-132 of the Code require the insurance company to pay an additional amount to the Commissioner so that it will pay South Carolina the same amount which a South Carolina insurance company is required to pay to the State of Arkansas, pursuant to Section 66-2302 of its Code; and (2) Whether the amendment to Section 37-132 of the Code, enacted by the General Assembly and approved on July 14, 1972, is to be applied retroactively.

The motion for Summary Judgment was heard by the Honorable J. A. Spruill, Jr., presiding judge, at the 1972 September Term of the Court of Common Pleas for Richland County. By his order of January 20, 1973, he held that Section 37-132 of the Code was to be so applied to the insurance company that investment credits otherwise available to it under Section 37-123 of the Code should not reduce the total license fee below that which a South Carolina life insurance company would have to pay in the State of Arkansas for transacting its business therein, and the license fee to be paid here by an insurance company should be calculated on the basis of gross premiums. He further held that the above ruling was to be applied only to tax periods prior to the amendment of Section 37-132 of the Code, which was effective on July 14, 1972. It is from these rulings that the insurance company prosecutes an appeal to this Court.

It is the position of the insurance company that the Commissioner's motion for Summary Judgment should not have been granted because a genuine issue of fact existed. A review of the record convinces us that there was no need for a factual hearing in this case. The only question was the application of the statutes to admitted facts.

The trial judge in granting the motion of the Commissioner for Summary Judgment relied upon the decision of this Court in *Lindsay v. Southern Farm Bur. Cas. Ins. Co.,* 258 S. C. 272, 188 S. E. (2d) 374, where a majority of this Court affirmed the judgment of the lower court holding that insurers doing business in South Carolina, who qualify for reduced tax rate on the basis of investment in South Carolina securities, are subject to the provisions of the Retaliatory Statute, Section 37-132, which provides that foreign insurers doing business in South Carolina must pay the same fees as the foreign state requires a South Carolina insurer to pay for doing business in such foreign state. If similar investment credit is not authorized by the foreign state, then South Carolina must retaliate since the taxes imposed by a foreign state on a South Carolina insurer are greater than the taxes imposed by South Carolina on the foreign insurer. We think the trial judge properly applied the rule announced in the cited case by requiring the insurance company to pay an additional amount to the Commissioner so that it will pay the same amount which a South Carolina insurer is required to pay to the State of Arkansas.

The insurance company contends that the decision in the cited case dealt with a casualty insurance company and that the application of Section 37-132 to a foreign life insurance company is not necessarily the same. We do not agree. Sections 37-122 and 37-123 have to do with life insurance companies and Section 37-124 has to do with casualty companies. However, Section 37-132 encompasses and deals with "insurance companies" and this includes casualty companies and life insurance companies.

We conclude that there was no error on the part of the trial judge in holding that the decision in the cited case was here controlling.

The General Assembly of this State, at the 1972 Session thereof, passed the General Appropriations Act and such was

approved by the Governor on July 14, 1972. Section 16 thereof, 57 Stats., at page 3025, provides:

"(A) Section 37-132, Code of Laws of South Carolina, 1962, as amended, be and the same is hereby further amended by adding at the end thereof the following: *'Provided, However,* that all license fees and charges made pursuant to this Section shall be reduced to the extent of investment credits granted by Sections 37-123 and 37-125, Code of Laws of South Carolina, 1962.'

"(B) This enactment is declared to be declaratory of the existing provisions of Section 37-132."

The insurance company contends that the trial judge committed error in not applying this statute retroactively. It is the position of the Commissioner that this statute operates prospectively and has no effect upon the obligation of the insurance company for license fees for any period prior to its enactment.

The trial judge refused to apply retroactively the above quoted amendment to Section 37-132 of the Code. He assigned as his reasons:

"* * * that the law is settled by the 1972 decision until such decision is reversed or modified. As he sees it, the provision in the 1972 amendment that it is 'declared to be declaratory of the existing provisions of Section 37-132' is a legislative attempt to reverse a decision of the Supreme Court. In effect, the General Assembly has said as to *Lindsay vs. Southern Farm Bureau Casualty Insurance Company,* 'We reverse.' Under our State Constitution which provides in Section 14 of Article I for the separation of the legislative, executive and judicial powers of the government, the General Assembly does not have authority to do this. Consequently, the 1972 amendment is to be given prospective effect only."

The construction of a statute is a judicial function and responsibility. Subject to constitutional limitations, the legislature has plenary power to amend a

statute. *Boatwright v. McElmurray*, 247 S. C. 199, 146 S. E. (2d) 716. However, a judicial interpretation of a statute is determinative of its meaning and effect, and any subsequent legislative amendment to the contrary will only be effective from the date of its enactment and cannot be applied retroactively.

In the case of *McCutcheon v. Smith*, 199 Ga. 685, 35 S. E. (2d) 144, the Supreme Court of Georgia held that an attempt by the Georgia Legislature to construe legislatively an earlier act, in a manner in conflict with its judicially determined meaning, was void as offensive to the provisions of the Georgia Constitution providing that the legislative, judicial and executive powers should remain separate and distinct.

> We conclude that the trial judge, for the reasons stated, properly refused to apply the amendment to Section 37-132 of the Code, retroactively.

The insurance company conceded that it was proper to require payment of its license fee on the basis of gross premiums, and such would be applicable for tax periods prior and subsequent to July 14, 1972, the effective date of the amendment to Section 37-132 of the Code.

> The Commissioner alleges error on the part of the trial judge in assuming that the insurance company here relied upon the opinions of the Attorney General

of South Carolina in making its investments in this State. This assumption by the trial judge was not a finding of fact and the exception, therefore, raises no question for our determination.

The exceptions of the insurance company are overruled, and the exceptions of the Commissioner are overruled but clarification in one respect is granted as is hereinabove stated.

Modified and Affirmed.

LEWIS and LITTLEJOHN, JJ., concur.

BUSSEY and BRAILSFORD, JJ., dissent.

BRAILSFORD, Justice (dissenting) :

Being of the view that the 1972 amendment of the retaliatory statute, Section 37-132, Code of 1962, can and should be given retroactive effect, I respectfully dissent. No one has suggested an applicable constitutional limitation on the authority of the legislature to amend this statute with retroactive effectiveness except the separation of powers clause, and no other occurs to me. It is, of course, conceded that the declaratory language of the 1972 amendment cannot be given effect as a *construction* of the pre-amendment retaliatory statute which was construed differently by this Court in *Lindsay v. Southern Farm Bureau Casualty Ins. Co.,* 258 S. C. 272, 188 S. E. (2d) 374 (1972). But the statute as amended requires no construction in this respect. The sole question is whether the amendment shall control the calculation of the insurance company's license tax for years prior to its adoption. The language of the amendment, although inappropriate, leaves no doubt that the legislature intended an affirmative answer to this question. I would give effect to the declaratory language as manifesting the intention of the legislature that the amendment should operate retrospectively and calculate the license tax accordingly. This construction of the amendment would effectuate the legislative will to remit part of the tax due under Section 37-132 as construed in *Lindsay* without violating any constitutional limitation on legislative power.

BUSSEY, J., concurs.