21566

P. KRAMER, Master-in-Equity for Dorchester County, Respondent v. COUNTY COUNCIL FOR DORCHESTER COUNTY, and Kenneth F. Waggoner, Rollins Edwards, Donald Handelsman, George P. Knight, Shirley Lang, Walter B. Wall, Jr., and T. Coke Weeks, as Members of the Dorchester County Council, Appellants.

(282 S. E. (2d) 850)

72

*James A. Bell,* St. George, and *James B. Richardson, Jr.,* of *Ham & Richardson,* Columbia, *for appellants.*

*H. C. Prettyman, Jr.,* and *James H. Abrams, Jr.,* both of *Prettyman, Cordray & Abrams,* Summerville, *for respondent.*

September 21, 1981.

*Per Curiam:*

This appeal challenges the constitutionality of Section 14-11-30, Code of Laws of South Carolina, 1976, as amended by Act 164, 1979. Relying upon this statutory enactment, the court below granted the respondent a *writ of mandamus.* To the extent that our ruling partially invalidates this Act, we vacate the *writ of mandamus* and modify the judgment of the trial court as set forth below.

This action was brought by the respondent, who is the Master-in-Equity for Dorchester County, seeking a *writ of mandamus* to require the county to comply with Section 14-11-30 by paying to respondent a salary in an amount not less than he was receiving as of June 15, 1979. This section provides as follows:

A master-in-equity shall be compensated in such amounts as may be provided and appropriated by the governing body of the county in which such master-in-equity shall serve; provided, a salary scale based upon caseload by the Court Administrator's office may be used as a guideline by the governing body of a county in compensating the master-in-equity, but in no case shall the governing body of a county having a full-time master compensate such master in an amount less than he is receiving as of June 15, 1979; *provided,* further, that nothing in this section shall in any way give the Court Administrator's office any additional control over the master-in-equity.

The appellant replied by Answer and Counterclaim seeking a declaratory judgment that Section 14-11-30 violates Article V, Section 1, of the South Carolina Constitution, in that it unconstitutionally (1) delegates to the counties the power to fix the compensation of masters-in-equity and (2) requires the counties to pay such compensation. The parties submitted the case below on the basis of stipulated facts. Thus we are called upon solely to address the constitutional validity of the enactment at issue in the foregoing particulars.

Under Code Section 14-11-10, the General Assembly has established in each county of the State the office of master-

in-equity. Also, by the terms of Section 14-11-30, the General Assembly has delegated to the several counties the power to fix the compensation of masters-in-equity, and required the counties to pay such compensation. This Court has consistently applied the settled principle which confines such delegations to local matters only. 16 C. J. S. Constitutional Law § 140(c), p. 663; Sutherland on Statutes and Statutory Construction, 4th Edition, Section 4.07, p. 80; *Gaud v. Walker,* 214 S. C. 451, 462, 53 S. E. (2d) 316. If the compensation of masters-in-equity is properly to be viewed as a purely local matter, as is for example the compensation of county officers, then this delegation may well be proper; if not, then our conclusion must be otherwise.

Resolution of this question requires a reading of Part II, Act 164, as a whole. The first section of Part II states that "the offices of master-in-equity and special referee shall continue to be a part of the judicial system," notwithstanding the abolition of certain other offices such as the standing master. References to the unified judicial system and to Article V appearing elsewhere in this same section indicate clearly that the General Assembly intends for the master's "office" to be part of the new and unified judiciary. Since the legislative intent is so clearly stated, we need not pursue the inquiry of whether the master-in-equity is a part of the unified system apart from the legislative direction.

It is certainly competent for the General Assembly to mandate county funding of county agencies, as in Section 4-1-80, Code. Likewise the General Assembly has the authority to direct counties to support with county funds the courts of the unified system. We so held in *State ex rel. McLeod v. Rhodes,* opinion filed May 6, 1980, wherein an interpretation of Section 14-21-485, Code, was sought in the original jurisdiction of this Court.

It is not possible, however, for the General Assembly to delegate to the counties the power to fix the compensation of those holding judicial "office" within the State judicial system. Such delegation clearly exceeds the scope of "local concerns," the only legitimate sphere for a

delegation of this sort, and contravenes the spirit of Article VIII, Section 14(4 & 6), South Carolina Constitution, which effectively withdraws the administration of the statewide judicial system from the field of local matters.

Ultimately we must recognize, too, that a delegation to the several counties of power to control the salaries of State judicial officers is incompatible with revised Article V, Section 1, of the South Carolina Constitution. It serves to prolong the particularism and non-uniform administration of justice that prevailed under the 1895 Constitution. We have consistently held unconstitutional legislation having such an effect. *State ex rel. Riley v. Pechilis*, 273 S. C. 628, 630, 258 S. E. (2d) 433; *State ex rel. McLeod v. Crowe*, 272 S. C. 41, 48, 249 S. E. (2d) 772; *State ex rel. McLeod v. Court of Probate of Colleton County*, 266 S. C. 279, 291, 223 S. E. (2d) 166; *Cort Industries Corp. v. Swirl, Inc.*, 264 S. C. 142, 146, 213 S. E. (2d) 445.

Section 14-11-30, Code, is therefore unconstitutional insofar as it empowers the several counties to establish the amount of compensation for masters-in-equity. Accordingly, the *writ of mandamus* of the trial court, as it relies upon these provisions, is vacated.

The question of whether the provision, which arbitrarily fixes a minimum salary for masters holding office on June 15, 1979 and not for subsequently qualifying officers, is constitutional is not raised and we indicate no opinion thereabout.

In the first provision to 14-11-30, the General Assembly has placed its approval upon a "salary scale based upon caseload" as developed by the Office of Court Administration for South Carolina. Thereby our legislature has revealed its conviction that a uniform salary scheme is appropriate for these judicial officers. The precise form of this salary scheme is a judgment to be made by the General Assembly. Our holding is simply that the power to establish these salaries must be exercised by the General Assembly and not by the counties.

Justice between these parties requires us to take notice that our holding may in effect leave the respondent with no compensation whatever. This possibility is in-

deed real given that Section 22, Article V, of the Constitution grants to the General Assembly a reasonable time to repeal the present statutory scheme and establish one in accord with Article V, Section 1. We therefore hold that Dorchester County shall determine and pay reasonable compensation to the respondent from the general funds of the County until such reasonable time as the General Assembly shall enact a uniform pay scale for masters-in-equity in South Carolina.

The judgment of the lower court is therefore modified in accordance with the foregoing views.