Robert **PRITCHETT**, et al., Plaintiffs,

v.

**J.H. LANIER**, et al., Defendants.

Civ. A. No. 6:90–324–9.

United States District Court,
D. South Carolina,
Greenville Division.

May 31, 1991.

William Joseph Sussman, Augusta, Ga., Thomas E. Maddox, Jr., Atlanta, Ga., for plaintiffs Robert Pritchett, Ben Pritchett and Marietta Garage.

W. Howard Boyd, Jr., Rainey, Britton, Gibbes & Clarkson, Greenville, S.C., for defendants J.H. Lanier, R.N. Alford, W.E. Williford, K.E. Payne, D.G. Kimbrell and Aaron Taylor.

## ORDER

SHEDD, District Judge.

### INTRODUCTION

The plaintiffs, Robert Pritchett, Ben Pritchett, and Marietta Garage, Inc., instituted this action against the defendants, officers of the South Carolina Highway Patrol, pursuant to 42 U.S.C. § 1983.[1] The plaintiff Robert Pritchett claims deprivation of his constitutional rights as a result of his arrest on June 6, 1989, for allegedly

---

**1.** Plaintiffs originally sued the named defendants individually and in their official capacities as officers of the South Carolina Highway Patrol. Upon motion of defendants, this court dismissed all claims against the defendants, in their official capacities, seeking monetary damages. However, the official capacity claims seeking injunctive relief were not dismissed, *Order* of Judge J. Anderson (June 30, 1990).

violating a highway department regulation governing wreckers. Robert Pritchett has also alleged a pendent state claim of malicious prosecution.

Plaintiffs Ben Pritchett and Marietta Garage, Inc. claim deprivation of their constitutional rights under the Due Process Clause of the United States Constitution resulting from the suspension and removal of Marietta Garage, Inc. from the highway department wrecker rotation list from which wreckers are called to the scene of automobile accidents.[2]

This case is before the court on motions for summary judgment. Defendants moved for summary judgment as to all causes of action. Plaintiffs moved for partial summary judgment on certain liability issues.

## FACTUAL SUMMARY

The undisputed facts are as follows. On the evening of June 6, 1989, an automobile accident occurred in Marietta, South Carolina. The Marietta Volunteer Fire Department received a report that one of the automobiles was on fire and an occupant was trapped. Robert Pritchett, an employee of Marietta Garage Inc., was a member of the fire department and heard the report while working at the garage. Robert Pritchett responded to the call in a wrecker owned by Marietta Garage, Inc. As it turned out, there was no one trapped in a vehicle but there was a small brush fire. Robert Pritchett helped put out the brush fire.

Approximately 1 and ½ hours after the accident, defendant Payne, a patrolman with the South Carolina Highway Patrol, arrived on the scene to investigate the accident. Upon his arrival, Trooper Payne questioned plaintiff Robert Pritchett and the fire chief about Pritchett being present with a wrecker. Trooper Payne was in-

formed by the fire chief and Robert Pritchett that Pritchett was dispatched to the accident scene as a volunteer fireman and that Pritchett used the wrecker as a mode of transportation. There was no indication by anyone at the accident scene that Robert Pritchett attempted to solicit business from any of the individuals involved in the accident.

However, Trooper Payne instructed Robert Pritchett to leave the scene with the wrecker because, allegedly, Robert Pritchett was in violation of a highway patrol regulation that prohibits wreckers from responding to automobile accidents unless summoned by appropriate police authority.[3] Robert Pritchett thereafter left the accident scene with the wrecker.

Subsequently, defendant Corporal Williford of the S.C. Highway Patrol arrived at the scene and was advised by Trooper Payne that Robert Pritchett had been at the accident scene in a wrecker. Corporal Williford told Trooper Payne to issue Robert Pritchett a citation for violation of the wrecker rules and regulations. Robert Pritchett and the fire chief were summoned back to the accident scene and Robert Pritchett returned in an automobile. Pritchett then was issued a citation. The citation was subsequently *nolle prossed.*

While the citation against Robert Pritchett was pending, defendant Captain Alford, the South Carolina Highway Patrol District Supervisor, suspended Marietta Garage, Inc. from the rotation wrecker list for a period of 90 days for violating the wrecker rules and regulations. The rotation list for wreckers is established according to regulations promulgated by the South Carolina Highway Department. Wreckers are called from this list to remove vehicles from accident scenes. At the end of the 90 day suspension period, defendant Corporal Kimbrell of the South Carolina Highway

---

**2.** Plaintiffs Ben Pritchett and Marietta Garage, Inc., also alleged a pendent state claim for defamation but voluntarily dismissed this cause of action at the oral hearing on these motions.

**3.** Regulations promulgated by the S.C. Highway Department pursuant to Section 56–5–6180 S.C. Code Ann. (1976) provide that:

(9) Wreckers shall respond only upon the request of the proper police authority. Response under any other condition may result in removal from the wrecker list.
R63–600, Wrecker Rules and Regulations

Patrol inspected Marietta Garage, Inc., to determine whether it complied with all rules and regulations for reinstatement on the rotation list. Corporal Kimbrell determined that the storage fees charged by Marietta Garage, Inc. exceeded fees customarily charged by the wrecker services in the area, violating a requirement that wrecker services on the towing rotation list charge reasonable towing and storage fees.[4] Marietta Garage Inc., was informed that in order to be reinstated on the rotation list the storage fees had to be lowered. Plaintiffs refused to lower the fees and as a result were not reinstated on the rotation list.[5]

Plaintiffs, prior to the events that gave rise to this lawsuit, had participated in an investigation into an alleged "kickback" scheme involving highway patrolmen and wrecker service operators. There is evidence that the arresting officers, Payne and Williford, were aware of plaintiffs' participation in this "kickback" investigation. Additionally, there are allegations that defendant Payne was implicated in the "kickback" investigation. Plaintiffs contend that these actions taken by the defendants were in retaliation for plaintiffs' participation in this investigation.

## LEGAL ANALYSIS [6]

Defendants moved for summary judgment on all of plaintiffs' causes of action arguing essentially that there are no genuine issues of material fact and the defendants are entitled to prevail on the merits of each cause of action as a matter of law. Additionally, defendants contend that they are protected from liability under the doctrine of qualified immunity as to plaintiffs' constitutional claims and that the South Carolina Tort Claims Act bars plaintiffs'

pendent state claims. Plaintiff Robert Pritchett moved for partial summary judgment on the issue of whether Corporal Williford and Trooper Payne had probable cause to arrest him. Plaintiffs Ben Pritchett and Marietta Garage, Inc. moved for partial summary judgment on their due process claim.

## I. CONSTITUTIONAL CLAIMS

### A. FALSE ARREST

Defendants Payne and Williford moved for summary judgment contending that there was probable cause to believe that Robert Pritchett had committed a crime and therefore these defendants could validly arrest him. Robert Pritchett allegedly violated Section 9 of the wrecker rules and regulations which provides that "Wreckers shall only respond upon the request of the proper police authority." According to defendants, this alleged violation of the wrecker rules and regulations was a crime.

◼ Plaintiff Robert Pritchett argues that there are no genuine issues of material fact and that he is entitled to partial summary judgment on the issue of probable cause as a matter of law. Robert Pritchett asserts that violating a wrecker regulation is not a crime. Alternatively, Robert Pritchett argues that even if the wrecker regulation does provide the basis for criminal charges, the officers knew or should have known that he was legitimately at the scene as a volunteer fireman and was not violating the regulation.

Initially, this court must determine whether the wrecker rules and regulations can form the basis for criminal charges. The regulations were promulgated pursuant to § 56–5–6180 S.C.Code Ann. (1976).

---

**4.** The pertinent regulation provides:
 (15) Charges for work performed must be reasonable. R63–600 S.C. Highway Department Regulations

**5.** At oral argument the Court was informed that Marietta Garage, Inc. has subsequently been reinstated on the towing rotation list.

**6.** At oral argument, plaintiffs' clarified the allegations and informed the court that the false arrest and malicious prosecution causes of action are brought by plaintiff Robert Pritchett

against defendants Payne and Williford. The due process claim is brought by plaintiffs Ben Pritchett and Marietta Garage, Inc. against defendants Lanier, Alford and Kimbrell.

 Additionally, plaintiffs voluntarily dismissed the injunctive relief sought against defendant Lanier because Lanier is no longer employed by the S.C. Highway Department. The defamation cause of action against defendant Taylor was also voluntarily dismissed.

Section 56-5-6180 S.C.Code Ann. (1976) provides that all rules and regulations promulgated by the highway department "shall have the full force and effect of law." Additionally, § 56-5-6190 S.C.Code Ann. (1976) states "it is a misdemeanor for any person to violate any of the provisions of this chapter ...". It is clear from the plain reading of these statutory provisions that the legislature intended that regulations promulgated pursuant to § 56-5-6180 S.C.Code Ann. (1976) would form the basis of misdemeanor crimes.

■ This reading is consistent with the general rule of administrative law that a duly promulgated regulation has the force and effect of law and becomes an integral part of the enabling statute. *See Faile v. South Carolina Employment Security Commission,* 267 S.C. 536, 230 S.E.2d 219, 221 (1976). Plaintiffs have not argued that the highway department exceeded the authority of the enabling statute with these wrecker regulations. As duly promulgated regulations, the wrecker rules and regulations have become an integral part of the statute and a violation of the provisions can form the basis of criminal charges.

■ Although the wrecker regulations can form the basis of criminal charges, defendants are not entitled to summary judgment on the false arrest cause of action. Probable cause is an essential element to a valid arrest. Without probable cause the arrest is unlawful. The Supreme Court has defined probable cause as: "Facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing ... that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

■ The undisputed facts reveal that a reasonable officer could not have believed that Robert Pritchett violated the wrecker regulations. Defendants argue that the mere fact that Pritchett was at the accident scene with a wrecker was sufficient to create probable cause for an arrest. This fact alone was not sufficient to justify an arrest, considering the other facts learned by the defendants prior to arresting plaintiff.[7] Defendants Payne and Williford were informed that Robert Pritchett had been summoned to the scene as a volunteer fireman and had remained at the scene under the direction of the fire chief. The initial call for emergency help described a collision with a fire and possible entrapment. There was in fact a fire. Robert Pritchett was at Marietta Garage at the time he received the call and drove the wrecker to the accident scene. Trooper Payne investigated the facts surrounding Robert Pritchett's presence in a wrecker and determined that there was no indication that he made any attempt to solicit business from the drivers.

Corporal Williford later arrived and learned these facts concerning Robert Pritchett's presence at the scene. More than one hour after Robert Pritchett left the accident scene, Corporal Williford ordered the fire chief and Robert Pritchett to return. Robert Pritchett returned to the scene in an automobile and was issued a citation.

These facts are not sufficient to warrant a reasonable police officer to believe a crime had been committed. The only reasonable explanation for Pritchett being at the scene with a wrecker is that he responded to the accident call as a volunteer fireman. This is not a crime, regardless of the fact that he drove a wrecker, particularly since there is no evidence to suggest

---

7. Defendants would have this court construe the regulation so broadly as to justify an arrest any time a wrecker happens upon an accident scene regardless of the circumstances. For example, under defendants' interpretation of the regulation, a wrecker driver who happened upon a car accident would be forced to choose between stopping to offer first aid and being arrested for stopping. This construction far exceeds the apparent purpose of the regulation, to prevent wrecker operators from responding to accident scenes, unless requested, in an attempt to solicit business. Additionally, such a broad construction could render the regulation unconstitutional because it would punish a person's status without requiring criminal intent. *See Robinson v. California* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1961).

that Pritchett attempted to solicit business from any of the accident victims. This court therefore rules as a matter of law that defendants Payne and Williford did not have probable cause to arrest Robert Pritchett. However, this ruling on the specific issue of probable cause does not preclude the defense of qualified immunity raised by the defendants.[8]

## B. DUE PROCESS

Both plaintiffs and defendants moved for summary judgment on the plaintiffs' due process claim. Defendants contend that wrecker operators do not have a property interest in being placed on the highway patrol rotation list. Plaintiffs argue that they do have a legitimate property interest based upon a reasonable expectation, both in being placed on the rotation list and in remaining on the list, and that the defendants do not have adequate procedural safeguards to protect this property interest.

■ The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects life, liberty, and property interests which rise to the level of legitimate entitlements. Mere unilateral expectations are not protected. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In *Board of Regents v. Roth* the Supreme Court stated: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577, 92 S.Ct. at 2709. Additionally, "a person's interest in a benefit is a property interest if there are such rules or are mutually explicit understandings that support his claim of entitlement to the benefit." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

■ The South Carolina wrecker rules and regulations create a property interest in remaining on the towing rotation list once a particular wrecker operator has been placed on the list. The regulations require that every highway patrol district establish zones for towing, and wrecker rotation lists are required for each zone, *R 63–600(8)*. The regulations further require that the rotation list "shall be administered fairly and in a manner designed to *ensure that all wrecker services on the list have an equal opportunity to the towing business arising from the rotation list*," *R 63–600(10)* (emphasis added). These regulations which have the full force and effect of law clearly give the wrecker operators who are placed on the list a property interest in the "towing business arising from the list." *See, Abercrombie v. City of Catoosa*, 896 F.2d 1228 (10th Cir.1990) (Oklahoma statute created a property interest in wrecker referrals).

■ Additionally, the mutual reasonable expectation of the wrecker services and the highway patrol create a property interest in being placed on the towing rotation list. The highway patrol and the wrecker services mutually expected that any company that met all the requirements of the regulations would be included on the list. Defendants Colonel Lanier, who headed the S.C. Highway Patrol during this time period, and Captain Alford, the local district head, testified that all companies that met the regulatory requirements could expect to be placed on the rotation list. Colonel Lanier and Captain Alford also testified that companies could expect to remain on the rotation list provided they complied with the requirements. (*Lanier* depo. at 32, *Alford* depo. at 68, 69.) Based upon the testimony of Colonel Lanier and Captain Alford, plaintiffs Ben Pritchett and Marietta Garage, Inc. had a reasonable expectation to be placed on and remain on the rotation list. This mutual expectation is sufficient to establish a property interest in being included on the rotation list. *See Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

Furthermore, the regulations allow the wrecker services to place their names on

8. See discussion of qualified immunity defense, *infra* at 450.

the towing rotation list. Section 8 directs that each Highway Patrol District "shall establish zones for towing and a wrecker rotation list shall be prepared for each zone." *R 63–600(8)*. Section 8 requires that a wrecker service must be located in the particular zone before it may have its name placed on the rotation list. Section 8 further provides that if a wrecker service has a separate business and a separate storage lot in more than one zone *"it [the wrecker service] may place its name on the rotation list* in any zone where such separate business and storage lot are located." *R 63–600(8)* (emphasis added). The quoted language grants the wrecker services the right to place their names on the rotation lists where they are located and creates a legitimate property interest in being placed on the rotation list. *See, Abercrombie v. City of Catoosa*, 896 F.2d 1228 (10th Cir.1990).

■ Once a legitimate property interest in an entitlement has been created, the Due Process Clause requires that a state provide adequate procedural safeguards to protect that interest. Defendants contend that even if plaintiffs have a property interest in being placed on the rotation list, there are sufficient appeal procedures available to plaintiff to satisfy Due Process requirements. According to defendants, plaintiffs were provided an opportunity to appeal the suspension from the rotation list to Captain Alford, the local district head. Plaintiffs allegedly were aware that they could appeal the suspension and chose not to. Plaintiffs assert that this procedure as a matter of law is inadequate because the procedure for appeal allegedly lacks sufficient notice since it is not in writing. Additionally, plaintiffs argue that the informal procedure does not provide a fair and impartial review since Captain Alford is the person who originally decided to suspend plaintiffs from the rotation list.

■ Without even addressing the alleged deficiencies with the purported appellate procedure, it is clear that the defen-

dants did not provide plaintiffs with a constitutionally sufficient process. It is undisputed that plaintiffs were not provided a predeprivation hearing of any kind. Due process requires that when a state seeks to terminate an interest, it must afford notice and opportunity for hearing appropriate to the nature of the case *before* the deprivation becomes effective. *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) ("the [Supreme] Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property"). *See, e.g., Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (the root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest-hearing required before termination of employment); *Parham v. J.R.*, 442 U.S. 584, 606–607, 99 S.Ct. 2493, 2506–07, 61 L.Ed.2d 101 (1979) (determination by neutral physician whether statutory admission standard is met required before confinement of child in mental hospital); *Memphis Light, Gas & Water v. Craft*, 436 U.S. 1, 18, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30 (1978) (hearing required before cutting off utility service); *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975) (informal hearing required before suspension of students from public school); *Wolf v. McDonnell*, 418 U.S. 539, 557–558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (hearing required before forfeiture of prisoner's good-time credits); *Fuentes v. Shevin*, 407 U.S. 67, 80–84, 92 S.Ct. 1983, 1994–96, 32 L.Ed.2d 556 (1972) (hearing required before issuance of writ allowing repossession of property); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (hearing required before suspending drivers' license and registration under state statutory scheme); *Goldberg v. Kelley*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970) (hearing required before termination of welfare benefits).[9]

---

**9.** In some circumstances the Supreme Court has held that a postdeprivation hearing or a common-law tort remedy for erroneous deprivation satisfies due process. These circumstances are generally limited to situations where there is a necessity for quick action by the State, *Logan v.*

This court finds that there are no genuine issues of material fact relating to the issue of whether plaintiffs were deprived of due process when Marietta Garage, Inc. was removed from the rotation list. As a matter of law, Ben Pritchett and Marietta Garage Inc, had a property interest in being placed on the towing rotation list and remaining on the list. Plaintiffs were deprived of this interest without Due Process of law.

However, there was no evidence presented that defendants Lanier and Kimbrell deprived plaintiffs of their constitutionally protected property interest in being placed on and remaining on the towing rotation list. The decision to suspend plaintiffs from the towing rotation list was made by defendant Alford, the district head. Defendant Lanier, who headed the state highway patrol, did not participate in the decision to suspend plaintiffs and only learned of the suspension after the fact. (*Lanier* depo. at 10). Even though defendant Kimbrell reinspected the plaintiffs' facility and operations and informed defendant Alford that plaintiff's storage fees were "unreasonable," Kimbrell did not have the authority to keep plaintiffs off the towing rotation list. That decision was made solely by defendant Alford.

## C. QUALIFIED IMMUNITY DEFENSE

The defendants argue that even if plaintiffs' constitutional rights were violated, they are immune from civil liability under the doctrine of qualified immunity. The defense of qualified immunity generally protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818,

102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Regardless of whether the constitutional violation occurred, the defendants should prevail if the right asserted by the plaintiffs was not clearly established in the "particularized" sense that "[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Even where the rights allegedly violated may be clear at some level of abstraction, the defendant should prevail if a reasonable officer could have believed his particular conduct lawful, a standard requiring a court to undertake an objective (albeit fact-specific) inquiry into the legal reasonableness of the conduct. *Id.* at 641, 107 S.Ct. at 3039, *Gooden v. Howard County, Md.,* 917 F.2d 1355, 1361 (4th Cir.1990).

The qualified immunity test necessitates three discrete determinations: the identification of the specific right allegedly violated, the determination of whether that right was so "clearly established" as to alert a reasonable officer to its constitutional parameters, and the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue. The first two determinations present pure questions of law. The third, though ultimately a legal question, may require subsidiary factual determinations. *Gooden,* 917 F.2d at 1361. Because the qualified immunity defense issue is before the court upon defendants' motion for summary judgment the court must read the pretrial record in the light most favorable to the plaintiffs. *Turner v. Dammon,* 848 F.2d 440 (4th Cir.1988).

### 1. *False Arrest*

The right to be free from arrest without probable cause is "clearly estab-

---

*Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) or where a predeprivation hearing is impractical or not feasible, *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

In this action, there is no dispute that a predeprivation hearing was feasible. Additionally there was no indication of a need for quick action to be taken by the State to remove plaintiff from the towing rotation list. There was no evidence that there was not ample opportunity for the State to provide notice and an opportunity to be heard before suspending Marietta Garage, Inc. from the wrecker rotation list.

lished." Additionally, the court has ruled as a matter of law that defendants Payne and Williford did not have probable cause to arrest plaintiff Pritchett. However, this does not mean that the qualified immunity defense must necessarily fail. The Supreme Court has expressly indicated that a police officer may be immune from civil liability even though the officer arrested a plaintiff without probable cause. In *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1986) the Court stated that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials ... should not be held personally liable." *Id.*, at 641, 107 S.Ct. at 3039. The test for determining whether the defense of qualified immunity is available to an officer who mistakenly arrests a civil rights plaintiff without probable cause is whether a reasonable officer could have believed that probable cause existed for plaintiff's arrest. *Id.*

■ Based upon the pretrial record before this court, defendants Payne and Williford should not be granted summary judgment on their defense of qualified immunity. When the record is viewed in the light most favorable to the plaintiff, this court cannot rule as a matter of law that a reasonable officer could have believed that probable cause existed for the arrest of the plaintiff Robert Pritchett. The record reveals that defendants knew that the plaintiff Pritchett had responded to the accident in his capacity as a volunteer fireman and remained at the scene under the direction of the fire chief. Robert Pritchett did not attempt to solicit any business from anyone at the accident scene, and in fact, two other wrecker services were summoned for the purpose of removing the vehicles. Defendant Payne, after assessing the circum-

stances, did not arrest Robert Pritchett but instead instructed him to remove his wrecker from the scene. Only later, when defendant Williford arrived, did the officers decide to arrest the plaintiff Pritchett. The initial determination not to arrest plaintiff is evidence of what a reasonable police officer would do under the circumstances.[10] Furthermore, there is testimony in the record from Captain Alford criticizing the manner in which plaintiff was arrested. *Alford* depo. at 24, 33, 34.

■ Additionally, there is sufficient evidence to create a factual issue on plaintiff's claim that the actions of defendants Payne and Williford were in retaliation for plaintiffs' participation into the "kickback scheme" investigation. If defendants Payne and Williford were retaliating against plaintiffs for exercising protected speech under the First Amendment then the defendants could not have reasonably believed they were acting within their rights, *Cf. Daulton v. Affeldt*, 678 F.2d 487 (4th Cir.1982); *See also, Reuber v. Food Chemical News, Inc.* 899 F.2d 271, 287 (4th Cir.1990) (denied summary judgment on the defense of qualified immunity where factual dispute existed over whether defendant discharged plaintiff from employment because of plaintiff's expression of protected speech under First Amendment, *rev'd on other grounds* 925 F.2d 703).

### 2. Due Process

Defendant Alford argues that he should be granted summary judgment on the Due Process cause of action because having a property interest in being included on the South Carolina Highway Patrol wrecker rotation list is not a "clearly established right." Defendant Alford asserts that there are no court decisions addressing this question under South Carolina law and thus no reasonably well-trained law enforcement official could be aware of its

---

10. Defendant Payne testified that he intended to issue a citation to plaintiff Pritchett in the first instance but had been previously instructed to call Corporal Williford should he find Pritchett at the scene. Payne was unable to make contact with Williford but was instructed by a superior officer, Lieutenant Ellis, to request Pritchett to remove the wrecker, *Payne* depo., at 16. Lieutenant Ellis' instructions, when viewed in the light most favorable to the plaintiff, create a genuine factual issue about whether a reasonable officer could believe there was probable cause for Pritchett's arrest.

existence. However, the specific parameters of a constitutionally protected property interest in a benefit were clearly established by the Supreme Court well before June of 1989 in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

In *Perry v. Sindermann* the Supreme Court stated that a property interest in a benefit exists if "there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit." 408 U.S. at 601, 92 S.Ct. at 2699. As noted previously, both defendants Alford and Lanier testified that it was reasonable for a wrecker operator to expect to be on the towing rotation list provided that all the qualifications were met. Moreover, the regulations on their face create a property interest once a wrecker operator is placed on the rotation list.

Furthermore, the right to a predeprivation hearing was clearly established. The Supreme Court has stated "while many controversies have raged about ... the Due Process clause, it is fundamental that except in emergency situations Due Process requires that when a State seeks to terminate an interest ..., it must afford notice and opportunity for hearing appropriate to the nature of the case *before* the termination becomes effective." *Bell v. Burson* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (emphasis in original).

■ However, the inquiry does not end once the court determines that the rights allegedly violated were "clearly established." The remaining essential element to the defense is whether a reasonable police officer could have believed that the particular conduct was lawful. The undisputed facts establish that defendant Alford could not have reasonably believed his conduct to be lawful. Defendant Alford decided to suspend Marietta Garage, Inc. from the wrecker rotation list. This decision was his alone. Alford admitted that wrecker service operators could reasonably ex-

pect to be placed on the rotation list. He knew or should have known that these operators obtained a monetary benefit from being on the list. Alford also knew that no predeprivation hearing of any kind was made available to plaintiffs. A reasonable law enforcement official with the knowledge of facts available to Alford could not reasonably expect his suspension of Marietta Garage, Inc. to satisfy the constitutional requirements of Due Process. Therefore, defendant Alford's motion for summary judgment on the defense of qualified immunity is denied. Moreover, plaintiffs' motion for summary judgment on the due process claim challenges the adequacy of the qualified immunity defense. There are no genuine issues of material fact pertaining to the qualified immunity defense and as a matter of law the court finds that Alford's defense of qualified immunity must fail.

## II. PENDENT STATE CLAIM

■ Plaintiff Robert Pritchett sued defendants Payne and Williford for malicious prosecution under South Carolina law. Defendants Payne and Williford moved for summary judgment on the cause of action for malicious prosecution arguing that under South Carolina law, a solicitor's decision to *nolle prosse* a case will not support a cause of action for malicious prosecution. However, while these motions were pending the South Carolina Supreme Court changed the law with respect to whether a *nolle prosse* will support a malicious prosecution cause of action. In *McKenney v. Jack Eckerd Company,* — S.C. —, 402 S.E.2d 887 (1991) the court ruled that when an accused establishes the charges were *nolle prossed* for reasons that imply or are consistent with innocence, an action for malicious prosecution may be maintained. Under South Carolina law, the supreme court decision should be applied retroactively because the court only modified an existing cause of action rather than creating a new tort. *See, Toth v. Square D Co.,* 298 S.C. 6, 377 S.E.2d 584 (1989)[11]. There

---

**11.** In *Toth* the S.C. Supreme Court ruled that its decision in *Smalls v. Springs Industries, Inc.,*

292 S.C. 481, 357 S.E.2d 452 (1987), recognizing that an employee handbook could be used as

are sufficient facts in the record from which a reasonable jury could find that the criminal proceeding against plaintiff Robert Pritchett were terminated for reasons that imply or are consistent with innocence.

 Defendants Payne and Williford also contend that the State Tort Claims Act, § 15–78–70 S.C.Code Ann. (1976), bars plaintiff's malicious prosecution action. But malicious actions are excluded from the immunity provided by the Act. Section 15–78–70(b) provides:

> Nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct ... constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.

To maintain a cause of action for malicious prosecution, plaintiff must prove malice in instituting the proceedings, *Ruff v. Eckerd Drugs, Inc.*, 265 S.C. 563, 220 S.E.2d 649 (1975). There are facts in the record when viewed in the light most favorable to the plaintiff to support a jury finding of actual malice on behalf of both defendants Payne and Williford. A reasonable jury could conclude that the arrest and prosecution of plaintiff Pritchett was done in retaliation of Pritchett's participation into the alleged "kickback" investigation.

## CONCLUSION

For the reasons stated above, partial summary judgment is granted in favor of plaintiff Robert Pritchett on the question of probable cause. Partial summary judgment is granted in favor of the plaintiffs Ben Pritchett and Marietta Garage, Inc. on the question of liability on their § 1983 cause of action for violations of their procedural due process rights against defendant Alford. Defendants Lanier and Kimbrell are granted summary judgment on the

cause of action against them in their individual capacities. The claim for injunctive relief against Lanier in his official capacity as head of the South Carolina Highway Patrol is dismissed with prejudice. The defendant Taylor is dismissed with prejudice.

The outstanding issues remaining for trial are as follows. Plaintiff Robert Pritchett shall proceed to trial on his cause of action for false arrest under § 1983 and the pendent state claim of malicious prosecution against defendants Payne and Williford. Payne and Williford are not prohibited from raising the defense of qualified immunity at the appropriate stages during trial. Plaintiffs Ben Pritchett and Marietta Garage, Inc.'s cause of action under § 1983 for the due process violation against defendant Alford shall proceed to trial for a determination of damages and injunctive relief.

IT IS SO ORDERED.

---

evidence in a breach of contract action against an employer, should be applied retroactively because it did not create a new cause of action. The court stated "decisions creating new substantive rights have prospective effect only, whereas decisions creating new remedies to vindicate existing rights are applied retroactively." 377 S.E.2d at 584.

The court in *McKenney v. Jack Eckerd Company* did not create a new cause of action for malicious prosecution. It only allows a person to maintain a cause of action for malicious prosecution where the charges against the person are *nolle prossed* for reasons that imply or are consistent with innocence.